UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,

        Plaintiff,

vs.                                                                    Case No. 4:18-cv-1793

BW RRI II LLC,
a Delaware limited liability company

        Defendant.

_____/

# COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, BW RRI II LLC, a Delaware limited liability company (sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2. Defendant's property, Red Roof Plus, has an address of 5823 Wilson Avenue, St. Louis, Missouri 63110, and is located in the City and County of St. Louis.

3. Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district. The Defendant's property is located in and does business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.  See also 28 U.S.C. § 2201 and § 2202.

5. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA.  The place of public accommodation that the Defendant owns, operates, leases or leases to is known as Red Roof Plus located at 5823 Wilson Avenue, St. Louis, Missouri 63110 ("Red Roof Plus").

6. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

7. Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

8. Plaintiff Fred Nekouee has visited the St. Louis area near the Red Roof Plus in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; and September 2018.

9. Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Red Roof Plus which forms the basis of this lawsuit on September 23rd and 24th, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area.  He has definite plans to return to the St. Louis area in December 2018.

10. The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Red Roof Plus near the heavy equipment dealerships he visits.

11. For the reasons set forth in paragraphs 7 through 10 and 20 of this Complaint, Mr.

Nekouee plans to return to the Red Roof Plus.

12. The Plaintiff has encountered architectural barriers at the subject property. The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, in access aisles and of walking surfaces, and have impaired his use of the restrooms in the Red Roof Plus.

13. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

14. The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

15. Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

16. On his visit to the Red Roof Plus, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles and walking surfaces (sidewalks).

17. The Plaintiff encountered barriers to access the restrooms in the accessible rooms of the Red Roof Plus.

18. The Plaintiff is deterred from visiting the Red Roof Plus, even though the Red Roof Plus is close to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the restrooms, lobby, accessible room #132, parking lot, access aisles and walking surfaces (sidewalks) until the property is made accessible to him in a wheelchair.

19. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property

as described but not necessarily limited to the allegations in paragraph 22 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

20. Fred Nekouee desires to visit the Red Roof Plus not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

21. The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

22. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). Preliminary inspections of the Red Roof Plus have shown that violations exist. The violations that Fred Nekouee personally encountered or observed on his visit to the Red Roof Plus include, but are not limited to:

**PARKING AREA**

a. In the parking lot, one of the two parking spaces for disabled patrons does not have the signage and international symbol of accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1. This lack of signage made it difficult for the Plaintiff to find a parking space.

b. As is shown in the photograph below, in the parking lot in front of the Red Roof Plus, there are no parking spaces for disabled patrons with van accessible signage near the

4

lobby, in violation of Federal Law 2010, ADAAG §. 208.2.4 and 502.6. Fred Nekouee observed this lack of signage.



c. In the parking lot, there are no parking spaces for disabled patrons with van accessible signage outside of the accessible rooms, in violation of Federal Law 2010, ADAAG §. 208.2.4 and 502.6. Fred Nekouee observed this lack of signage.

d. In the parking lot, the two access aisles serving the accessible parking spaces outside of the accessible rooms are 48 inches wide and less than the minimum required width of 60 inches (1525 mm), in violation of Federal Law 2010, ADAAG § 502.3.1. Fred Nekouee encountered these narrow access aisles, and it was difficult for him to use them in his wheelchair.

e. In the parking lot, one of the parking spaces for disabled patrons outside of the accessible rooms has an excessively steep running slope, as steep as 1:19.6 (5.1%), which

slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   In this parking space, Fred Nekouee was unstable in his wheelchair exiting and entering his vehicle.

f.  In the parking lot, the parking space for disabled patrons in front of the lobby has an excessively steep running slope, as steep as 1:23.8 (4.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   In his wheelchair, the Plaintiff encountered this steep slope and he was unstable in his wheelchair in this parking space.

g.  In the parking lot, the running slopes of the two access aisles serving the accessible parking spaces outside of the accessible rooms are as steep as 1:27 (3.7%) and 1:26.3 (3.8%), which slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   Fred Nekouee encountered these steep access aisles and it made him unstable in his wheelchair going to and from his vehicle and his accessible room at the Red Roof Plus.

h.  The cross slope of the walking surface near the accessible rooms is as steep as 1:10.4 (9.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this walking surface in his wheelchair and it was difficult for him to remain stable on it.

i.  The cross slope of the walking surface outside of the vending machine room is as steep as 1:32.3 (3.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this walking surface in his wheelchair and it was difficult for him to remain stable on it.

j.  The running slope of the accessibility ramp in front of the accessible rooms is as

steep as 1:7.5 (13.3%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.  The Plaintiff required assistance in his wheelchair to go up and down this ramp to the accessible room.

k.  The running slope of the walking surface outside of the entrance to the vending machine room and within the entrance door required maneuvering space of 60 inches, is as steep as 1:25.6 (3.9%), which slope is steeper than the maximum allowed slope of 1:48 (2%) within such door maneuvering space, in violation of Federal Law 2010, ADAAG § 404.2.4.4.  Fred Nekouee slid sideways in his wheelchair while trying to enter the vending room.

### LOBBY AREA, COUNTER AND LOBBY ENTRANCE DOOR

l.  The door handle to the lobby entrance door requires tight grasping and pinching, and cannot be opened with a closed fist or loose grip by a disabled individual, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.

m.  The force needed to open the door to the vending an ice machine room is 9.5 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.  The Plaintiff required assistance in his wheelchair to open this door.

n.  The counter in the lobby is 47 inches above the finish floor and higher above the finish floor than the maximum counter height of 36 inches, in violation of Federal Law 2010, ADAAG § 904.4.1.  The Plaintiff could not reach items on the counter from his wheelchair including the card reader device screwed to the lobby counter.

o.  The card reader of the soda machine in the lobby is 61 inches above the finish floor

7

and higher above the finish floor than the maximum allowed height of 48 inches when the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. Fred Nekouee could not reach this card reader from his wheelchair.

### ACCESSIBLE GUESTROOM 132

p.   The entrance door threshold to accessible guestroom no. 132 is 2 inches high, which height is higher than the maximum allowed height of 0.75 inches, in violation of Federal Law 2010, ADAAG § 404.2.5.   Fred Nekouee required assistance in his wheelchair to cross over this threshold.

q.   The height of the characters on the door sign of accessible guestroom no. 132 is less than the minimum required character height of 5/18 inch (16 mm), in violation of Federal Law 2010, ADAAG § 703.5.5.   As a result of this condition, the Plaintiff could not read a portion of this sign.

r.   The iron in the accessible guestroom no. 132 is installed at 70 inches above the finish floor and higher than the maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   From his wheelchair, the Plaintiff could not reach this iron.

s.   The rod to adjust the curtains in accessible guestroom no. 132 is 51 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of federal Law 2010, ADAAG § 308.2.   The Plaintiff required assistance to adjust the curtains.

### ACCESSIBLE GUEST RESTROOM (ROOM 132)

t.   The control nob to stop the drain in the accessible guest restroom of room no. 132

requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   The Plaintiff encountered this condition.

u.    In the accessible guest restroom of room no. 132, a shower spray unit with a hose that can be used as both a fixed-position shower head and as a hand-held shower is not provided, and the fixed shower head is out of reach, installed at a reach height of 69 inches, in violation of Federal Law 2010, ADAAG §§ 607.6 and 308.2.   The Plaintiff required assistance to bathe due to this condition.

v.    In the accessible guest restroom of room no. 132, a permanent seat at the head end of the bathtub or a removable in-tub seat is not provided, in violation of Federal Law 2010, ADAAG § 607.3.   The Plaintiff required assistance to bathe due to not having a seat in the bathtub.

w.    In the accessible guest restroom of room no. 132, a grab bar is not installed on the wall at the control end of the tub, in violation of Federal Law 2010, §§ 607.4.1.2 and 607.4.2.2.   Due to this condition, the Plaintiff required assistance to bathe.

x.    In the accessible guest restroom of room no. 132, the bathtub control is not between the centerline and the open side of the bathtub, in violation of Federal Law 2010, ADAAG §§ 607.5 and 608.5.   Due to this condition, the Plaintiff required assistance to turn on the water to the bathtub/shower.

y.    In the accessible guest restroom of room no. 132, the top of the gripping surface of the lower grab bar on the back wall of the tub is 13 inches above the tub rim and not within a minimum of 8 inches (205 mm) and a maximum of 10 inches (255 mm) above the rim of the bathtub, in violation of Federal Law 2010, ADAAG § 607.4.1.1.   As a result of this condition, the Plaintiff required further assistance to use the bathtub.

z. In the accessible guest restroom of room no. 132, the toilet stall width is 41 inches and less than the required minimum of 60 inches for a wheelchair accessible compartment. This narrow width does not provide the required clear floor space and turning space for an individual in a wheelchair, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.  Due to this narrow width, Fred Nekouee required assistance to use the toilet.

aa. In the accessible guest restroom of room no. 132, the toilet compartment lacks a rear wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5.  The Plaintiff required assistance to use the toilet due to this condition.

bb. In the accessible guest restroom of room no. 132, the side wall grab bar length is 24 inches long and less than the minimum required length of 42 inches (1065 mm), in violation of Federal Law 2010, ADAAG § 604.5.1.  The Plaintiff required assistance to use the toilet due to this condition.

cc. In the accessible guest restroom of room no. 132, the side wall grab bar only extends 48 inches from the rear wall and does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.  The Plaintiff required further assistance to use the toilet due to this condition.

dd. In the accessible guest restroom of room no. 132, the toilet paper dispenser is outside the reach range of an individual in a wheelchair, which dispenser centerline is 13 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.  Due to this condition, the Plaintiff required assistance to have toilet paper to use.

ee. In the accessible guest restroom of room no. 132, the lavatory pipes under the

10

sink are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5. Fred Nekouee was in danger of having the skin on his legs burned or injured as a result of this condition.

ff. In the accessible guest restroom of room no. 132, the control for the lavatory faucet requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4. It was very difficult for Fred Nekouee to turn on the water and he required assistance to turn it off.

gg. In the accessible guest restroom of room no. 132, the space between the grab bar and the toilet paper dispenser is 0.5 inches, in violation of Federal Law 2010, ADAAG § 609.3.

hh. In the accessible guest restroom of room no. 132, the water closet or toilet does not have the flush control counted on the open side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.

ii. In the accessible guest restroom of room no. 132, the hairdryer is installed at 57 inches above the finish floor and higher than the maximum reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. Fred Nekouee could not reach this hairdryer from his wheelchair.

jj. In the accessible guest restroom of room no. 132, the distance from the toilet centerline to the side wall is 21 inches and not between a minimum of 6 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2.

23. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design,

as promulgated by the U.S. Department of Justice.

24. The discriminatory violations described in paragraph 22 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

25. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

26. Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

27. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

28. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

29. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

30. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

31. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Red Roof Plus and adjacent parking lot spaces to make those facilities readily accessible and useable to the

Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*
